Our first case on the docket today is Engelmann v. Detmer. We have Brandmeier for the propellant and Schrader for the ethylene. Thank you, Your Honor. May it please the Court, good morning. Good morning, Schrader. Your Honor, just as a side note, Mrs. Engelmann had asked if she should be here. I told her that she should stay. I know that this is a debt-raising court. Your Honor, this is a custody case, and in the specific, it's a custody case about a little girl who is about to be 10 years old by the name of Corinne Engelmann. In the more abstract, it is actually about a child, Corinne, who is a student that was receiving special education classes at New Maiden Elementary and had been doing so at least for three years prior to being taken away from her mother. Judge, Corinne, Your Honor's Reverend, Corinne, at the time of the trial of this case, was ready to begin her school again at New Maiden Elementary. She was going to be 9 years old, and she was, in fact, I believe the trial was on the first day of the scheduled date for that school to resume. Corinne spent all of her life, up until the court's ruling, living with her mother, Annie Engelmann, now Annie Engelmann-Strade, and more recently with Annie and her new husband and their children that they have together. Now, throughout the time that Corinne had been living at New Maiden, she had a nuclear family. The Engelmann family was a very tight-knit, close nuclear family. The testimony came out in trial to that effect. Annie always relied upon her nuclear family, which was her mother, her father, other members of her family, in order to help her raise Corinne. Corinne became very attached to this family. Corinne lived in New Maiden, like I said, all of her life up until the time that the court changed custody, meaning that she had gone to no other school than the one that she had attended at New Maiden. She had been familiar with no other neighborhoods other than the ones that she had been at New Maiden up until that point. Her support group, her nuclear family support group, was still at New Maiden. Her friends that she had acquired over the years was still at New Maiden. Now, Chris Steadmurray is Corinne's father. At the time that Corinne was born, Annie and Chris were on wonderful terms. In fact, they continue to be on wonderful terms, and in our opinion, much because of Annie, that they remain that way. Early on, shortly after Corinne was born, the state had filed a petition for child support, seeking child support from Chris. That was ordered. The court record shows that. A number of years passed before anything actually significant happened in that particular court case, but it really started to change, I guess, in February of 2011. Let me back you up a minute. I thought the father filed some motion to modify it in January of 2004. What happened to this? He did. Abandoned it? Pardon me? Did he abandon it? Never called for hearing? I believe that it was called for hearing. There were visitation orders essentially entered, which granted a specific right of visitation to Mr. Steadmurray at that time. That was the primary result. I obviously was not involved in the case at that time, but there may have been some secondary issues that were resolved with that, one of which was insurance for the child and things of that nature. Let me ask you another question. Can I assume that there was no in-camera with the child in the court? Not in this most recent case, Jim. There was no in-camera. There was no guardian invited. Now, when Mr. Detmer filed the most recent petition in February of 2011, he filed it under the guise of a petition for change of custody, and he had been given sole custody of Corinne for the duration of Corinne's little life at that time. Now, quite ironically, at about the same time that Mr. Detmer filed his petition to modify custody, he had also hired a tutor for Corinne to try to help her with her reading and her comprehension and her math skills and things of that nature. He did this with at least the implicit consent, but not the direct consent of Annie. That's how these two had worked. Annie, quite frankly, is a very simple and loving person. She allowed Chris to have this contact and input into Corinne's life without much fuss. They typically talked with each other about medical appointments, dental appointments, eyeglass appointments, things of that nature. Now, with regard to the specific educational needs of Corinne, which seems to be the focus of this case and the reason why the court decided to change custody, Chris was allowed to have significant input with the IEP that Corinne had at her school, was allowed to talk with the instructors regarding this. But I believe, and I don't want to misstate the evidence, but I believe the testimony of the trial was that it wasn't up until the end of the school year of 2011, so therefore in April or so of 2011, after he had already filed the petition to modify custody, did he actually contact the special ed teacher that Corinne was receiving education plans from and being taught? Well, Chris relied very heavily upon his proactive, is what he called it, methods of trying to address essentially a learning problem that Corinne had. And in fact, in his brief, he had used a lot of statements made by Corinne's special ed instructor, something like, Corinne has the ability to learn, but she's not. Well, that's the nature of a learning disability. The nature of a learning disability is not that someone doesn't have the intelligence, as was suggested in their brief, but rather they have adequate intelligence, they just need to learn differently. Now, Corinne's special ed teacher's name was Meg Bilharts, and Meg testified at trial. Meg, quite frankly, was the only legitimate witness who can testify as to what the education issues with Corinne are. She's in special ed, they used a modified grading scale. That modified grading scale is applied across the board and not especially for Corinne. Now, Chris used his tutor that he hired, that he had paid, and that to that point had seen Corinne just more than a handful of times, but really had not gotten much in the way of the ability to diagnose Corinne's learning disability, nor did she have the qualifications to do so. That tutor also never spoke with Corinne's special education teacher. Now, in closing, I guess, Mr. Pike, who had tried the case for Chris at that time, I believe crystallized what his arguments were, and it's recited in my brief. He used statements like, is Corinne going to be in a home where she'll be pushed to become the most she can be, or is she going to stay where she is and basically have standards reduced and be, ellipsis, not have any expectations of her? And then he goes on to say, is Chris going to do a better job or is Anne? And then I guess perhaps the worst part of the argument that seemed to catch the court's attention was this statement. If Corinne doesn't succeed, we just dumb the curriculum down until she does. Finally, he says, in 15 years, is Corinne going to be a burden or is she going to be a contributor to society? Quite frankly, Your Honor, I don't believe that that is the standard by which we decide to change the custody of a child who has special education. Our standard is abuse of discretion. That is correct. It's the highest standard. It is the highest standard. I believe that the court, quite frankly, abuses discretion in changing custody without any clear and convincing evidence to do so. I would agree that if Chris had filed a petition for more visitation, perhaps he could have gotten more visitation as a result of this. He could have had more contact with Corinne. But I don't believe that the standard was reached clear and convincingly to change custody. You've got basically conflicting testimony as to educational approaches and educational standards. Does your argument go to the weight of the evidence to be determined by the trier of fact? And is that a solid ground to make an argument that the court abused its discretion, given no objection in trial as to the admissibility of that evidence? The trier of fact needed to assign what they determined to be the appropriate weight. And you've got an abuse of discretion standard you have to meet. I would agree with that also, Your Honor. However, in this particular case, if we are to hold the two up and compare the strength of the testimony, it's clear that the testimony that should be given the most weight was a teacher who was Corinne's special education teacher for three years and saw her weekly versus essentially a hired gun with little experience in the field to begin with who has never consulted with that special education teacher for any reason. And also if we are to consider that tutor that was hired by Chris, if we were to take her testimony as being gospel, the fact of the matter is that she suggested that Corinne does have some issues, but those are not issues that can be cured necessarily except by the same type of regimen that Corinne was receiving when she was at New Baden Elementary. So in that regard, our argument is that the tutor that was hired by Chris Detmer actually didn't add much. If anything, it may have supported the position that Corinne was receiving the type of training that she needed. Your Honor, these other issues that were advanced by Mr. Detmer related to medical and dental and eyeglass issues and things of that nature, I think the record is clear that, but for the express consent of Annie, Chris had no input whatsoever in any of this. And that those, quite frankly, while significant to some degree, are more red herrings in this whole process. Thank you. Thank you, Counsel. You have an opportunity to rebuttal. Counsel? May I please report, Mr. Brandmeier? Judge Becker's August 26, 2011 order to award so-legal and primary custody of Corinne to Christopher is not contrary to the law of this state. It's also not against the weight of the evidence. And it was clear and convincing evidence that Judge Becker noted within his order that he held this change of custody to. That order should be affirmed by this Court. Judge Becker's decision was in the best interest of Corinne. There is no doubt about it as set forth within Judge Becker's order. A substantial change of circumstances occurred to modify that custody. The finding of a substantial change of circumstances within his order, Your Honor, and he's got it noted three times that it was based upon clear and convincing evidence. There are only two documents that I think this Court needs to look at in order to affirm Judge Becker's decision. First, look at his detailed order. It sets forth what he observed and what he based his finding upon on those two days of hearing. The second is Respondent's Exhibit 3. I know it's a poor copy, but this is Corinne's report card. I reprinted it for the Court on page 16 of my brief. And there have been a lot of innuendos with regard to the filing of our motion to modify. Judge Becker also dealt with that within his order. He said that it was not based upon Annie's filing for child support. It was due to this report card. And if you look at the end of the second quarter, you'll see that this child was failing reading, math, and English. And she was almost failing spelling. Those are the only two documents that this Court needs to look at to affirm this decision. As a result of getting that report card when Mr. Detmer received it around Christmas of 2010 or January of 2011, he on his own went and hired Ms. Neddemeier. And I heard Mr. Brandmeier disregard Ms. Neddemeier's testimony. She appeared by video at the trial. But she is a third grade teacher, also in Clinton County. She teaches third grade at Beckermeier. She lives in Aviston. So what Chris did was he mentioned it to Annie about getting Corinne a tutor. Nothing was done. So he went and got Ms. Neddemeier to teach his daughter, twice a week usually. He would drop her off during his visitation times at her home in Aviston, which isn't far from where Chris lives. And Ms. Neddemeier talked about, she appeared as I said by video, and said Corinne's like a little sponge. She absorbs it all when she teaches her. And she will keep absorbing it. And Judge Becker noted it within his order that at the time of the hearing in August of 2011, that Corinne's development had been improved. It had assisted her education. I find it disingenuous to argue that a substantial change in circumstances hasn't occurred by this report card. This is a substantial change in circumstances. This child has the ability, as noted by not our witness, as Mr. Brandmeier said, it was his own witness. Meg Bilharts testified that they give standardized tests in New Baden. And it showed that her failing grades, Corinne's failing grades, were not reflective of her ability. Judge Becker noted within his order that Annie is not as interested in or willing to take the positive, enforceable, proactive action necessary to make sure that Corinne does well in school. Corinne is the youngest in her class. She was born on August 31st of 2002. That's a cutoff in Illinois. Yet the testimony by Annie was that there was no discussion about holding this child back and having her repeat the third grade. We all know, it's common sense, that these primary grades are upon the foundation upon which our education is built for these kids. But nothing was done. There are two questions in the transcript. I attended the hearing, and there were two questions that Mr. Pike asked Annie, and it's at the record on 35. He asked her, do you anticipate any problems at all your daughter is going to have in the fourth grade? She probably will have a little bit, Annie answered, but every child has problems. Mr. Pike said, so you don't foresee any real problems? She'll do fine in the fourth grade? And Annie said, yes. That report card, every child doesn't fail primary subjects that we're talking about here. Every child in the third grade doesn't fail reading, math, and English, and all the spelling. This isn't a little problem. This was something to be dealt with. And as Mr. Brandmeier talked about, Judge Becker also didn't say, or he didn't just deal with the education, he said that was the primary focus of his order. But he also said it was Chris who has always taken a proactive, hands-on approach in obtaining the necessary medical, optical, and dental care for Corinne since she was born. Now, Mr. Brandmeier said something about how the nuclear family of the Engelmans has helped Annie raise this child. Mr. Detmer has had Corinne overnight for visits since she was three days old. He has always been actively involved in her life, as well as his extended family, of which I'm included. Mr. Detmer obtained eyeglasses for Corinne, he got her dental work done, he was proactive. And what Chris testified at the trial, what he said, he did it, so it got done. That's an exact quote from his testimony. The correct burden of proof was applied to this case, and all the factors of 602, there was some argument within the appellant's brief that those factors weren't applied. You don't have to set out those ten specific factors, each enumerated, you know, and go through each one of the statute. But they were dealt with. Anyone who reads Judge Becker's order can see that. The modification statute says what we have to do. Judge Becker said in his order, and it's a quote, Chris is most interested in providing the best education possible for Corinne. Corinne has the ability, we want her to succeed academically, and it's in her best interest for custody to be affirmed to Chris. The statute, the 610, says what we have to do. You have to find that modification is changed by clear and convincing evidence. I said in my brief that Judge Becker noted that twice. In preparing for today's hearing yesterday, I noticed he said it three times. He found it by clear and convincing evidence. The substantial change in circumstances that has occurred, that's his report card. As the testimony said, she has never done this bad before. Something had to be done. And the modification has to be necessary to serve the best interest of that child. We have that here. It is in her best interest to have Chris having custody of her and getting the additional help that she needs. He gets it done. He is a passive, he isn't mellow as the testimony was with regard to Annie. He gets it done. He took action, and he did it. We respectfully request that this court affirm Judge Becker's August 26, 2011, order awarding custody of Corrine to Chris. Thank you. Thank you, Counsel. Thank you, Your Honor. First, a couple of things about Mrs. Schrader's statements. If we're going to take a report card of a child and use that as a basis for a change in circumstances, or a substantial change in circumstances, it would be helpful if that same party making that argument would be required to show what the prior situation was. That was not done. On the same token, there was nothing, nothing whatsoever to suggest that Corrine had anything other than a learning, not a learning disability, but a nonspecific learning disability that didn't prevent her from learning, but got in the way of it. Also that she did not have the adequate intelligence to learn, but that she needed special education in order to access that understanding. More importantly, Your Honor, is that Corrine has now been changed to a new town and a new school district. There was no evidence, although Mr. Detmer had the ability to do this, there was no evidence whatsoever by testimony or otherwise from anyone connected with that new school district to suggest that what Corrine's special education regimen is going to be now. If we are going to continue to rip a child from their longstanding home on the basis of poor grades, I suspect that if Corrine does poorly at Gapesdale Elementary where she is a student now, that we may be back in front of this Court sometime next year. Corrine has a learning disability. Now, I agree that the Court does not have to specifically state the 602 factors in there. However, it should be clear and convincing in the evidence, in the testimony, in the evidence that's produced. We can't just assume that there is by virtue of a court saying that there is. That's why we have Your Honor. The trial court specifically talked about the three factors that seem relevant, and the other six don't seem relevant to the facts. Do you agree with that? Well, the ones that are relevant, Judge, is that continuity is important. The relationship between the child and her family or her extended family, that's important. Her manner of adapting to her community, her relationship with her parents, things of that nature, those are the ones that are important. Those are the ones that, quite frankly, got short shrift by the Court's decision. Instead, the Court concentrated on things that there was no, they don't sound good, I will admit that, but there was no evidence to suggest that there was a change in anything. There was not even a remote suggestion that Corrine's grades were anything different from previous years, contrary to counsel's suggestion. Now, Judge Becker summed it all up by looking at both of these folks, first talking about how he is, I guess, he finds education as a very important factor. And then he says, I think each of you are both fit parents. I don't think there's any question about that. I told your lawyers if I had either of you as a parent in about 90% of the cases that show up here, you would win. There wouldn't even be a contest because I think you're both able to take care of Corrine. I think that both of you have her interest at heart. I think that's a telling statement. Quite frankly, I think it's a statement that there was no true, clear and convincing evidence one way or the other. Certainly not enough to modify this. I'd ask your honors to overturn the Court's decision. Thank you, counsel. Thank both of you for your briefs and arguments. The Court will take the matter under advisement to render its decision.